UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LESLIE G. STOKES,

    Plaintiff,

v.                                                                Case No. 8:20-cv-2194-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of his claim for Social Security Income (SSI) and Disability Insurance Benefits (DIB). For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1958, has a high school education, and has past relevant work experience as a fry cook. (R. 25–26, 36). In July 2018, the Plaintiff applied for SSI and DIB, alleging disability as of October 2008 due to dysthymia, delusional disorder, alcohol disorder, high blood pressure, chronic kidney disease, and

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the Defendant in this suit.

adjustment disorder with anxiety and depressed mood. (R. 104–05, 121). The Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration. (R. 103, 118, 129, 146).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in February 2019. (R. 33–70, 177–78). The Plaintiff was represented by counsel at that proceeding and testified on his own behalf. (R. 33, 36–44, 50–55, 61–68). A vocational expert (VE) and the Plaintiff's sister, Madonna Peace, also testified. (R. 44–49, 55–60, 69–70).

In a decision issued in March 2020, the ALJ determined that the Plaintiff (1) had not engaged in any substantial gainful activity since his alleged onset date in October 2008; (2) had the severe impairments of obesity, generalized anxiety disorder, major depressive disorder, chronic kidney disease, and status post-wedge compression fracture of an unspecified lumbar vertebra; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[2] (4) had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but would require certain nonexertional limitations; and (5) based on the VE's testimony, could not engage in his past relevant work but was capable of making a successful adjustment to other jobs that exist in significant

---

[2] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). When a claimant's affliction(s) match an impairment on the list, the claimant is automatically entitled to disability benefits. *Id.*; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

numbers in the national economy. (R. 15–27). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 27).

The Appeals Council denied the Plaintiff's request for review. (R. 1–4). Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).[3] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[4] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his

---

[3] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[4] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

3

RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove he cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the proper legal standards and whether the decision is supported by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted). In evaluating whether substantial evidence supports the Commissioner's decision, a court "may not decide the facts anew, make credibility determinations, or re-weigh the

evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). While a court will defer to the Commissioner's factual findings, it will extend no such deference to her legal conclusions. *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

### III.

The Plaintiff raises two challenges on appeal: (1) the ALJ's consideration of the testimony of the Plaintiff's sister, Ms. Peace, was inadequate; and (2) the ALJ erred in assessing a joint vocational rehabilitative opinion rendered by two psychologists, Dr. William Austin and Dr. Roy Arroyo. (Doc. 19). Upon careful review of the parties' submissions and the pertinent portions of the record, the Court finds the Plaintiff's claims to be without merit.

### A.

The Plaintiff's first challenge centers around Ms. Peace's testimony regarding the Plaintiff's mental health issues. *Id*. at 17–20. Among other things, Ms. Peace testified that the Plaintiff "could not take criticism" and that he "would become either reclusive[ ] or aggressive," even "resorting to choking her" on one occasion. (Doc. 19 at 19) (citing R. 47–48, 51). Ms. Peace additionally testified that the Plaintiff's home was infested with bugs (which she attributed to the Plaintiff's failure to put away food or groceries) and produced photographs of the Plaintiff's residence to buttress her testimony. (R. 48)

In his decision, the ALJ discussed Ms. Peace's observations about the Plaintiff, stating:

5

> The [Plaintiff]'s sister testified that the [Plaintiff] does not care for his house and submitted pictures to this effect. While this evidence is relevant to the impact that the [Plaintiff]'s mental impairments have on his ability to perform work-related activities, and is potentially supportive of some limitation in the fourth mental domain, it does not demonstrate the presence of a *per se* disability. The [Plaintiff] remains capable of cooking meals, riding public transit, and shopping in stores.

(R. 24) (citations omitted).

The Plaintiff now argues that the ALJ should have afforded greater consideration to Ms. Peace's testimony because she was in a position to offer "a much more accurate picture of [the Plaintiff's] mental limitations" than even the Plaintiff, whose testimony the Plaintiff admits "often" conflicted with Ms. Peace's. (Doc. 19 at 19–20). The Plaintiff further posits that Ms. Peace's testimony was also deserving of closer inspection because she was a teacher of special education students with greater awareness of her brother's problems "than a mere lay witness." *Id.* at 18, 20. This argument fails.

The Regulations provide that the Commissioner "may" use evidence from nonmedical sources (such as family members) that is relevant to a claimant's impairments and how they affect his ability to work. *See* 20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4). Here, as noted above, the ALJ explicitly discussed in his decision Ms. Peace's comments about the Plaintiff's mental health issues and, while finding those remarks probative, determined that they did not demonstrate the Plaintiff was disabled given his activities of daily living. (R. 24). This discussion shows that the ALJ devoted appropriate attention and scrutiny to Ms. Peace's statements at the hearing. To the

extent that the Plaintiff suggests the ALJ should have construed Ms. Peace's testimony as more credible than the Plaintiff's, or, put another way, should have accorded her testimony more weight, such a re-examination of the evidence goes beyond the Court's limited role here. *Carter*, 726 F. App'x at 739 (noting that a court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence" on appeal) (citation omitted).

The Court is likewise unpersuaded by the Plaintiff's related contention that the ALJ's analysis of Ms. Peace's testimony is not sufficiently bolstered by the documentation and information before the ALJ. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam). By the Court's review, the ALJ's explanation that Ms. Peace's statements about the Plaintiff did not cohere with the record evidence demonstrating the Plaintiff's capability to cook his own meals, to take public transit, and to shop in stores is adequate to support the ALJ's determination on the matter and obviated any need for him to "more fully" assess Ms. Peace's testimony. *See Biestek*, 139 S. Ct. at 1154.

B.

As noted above, the Plaintiff's second challenge pertains to the ALJ's evaluation of the joint opinion of Drs. Austin and Arroyo at step four of the sequential evaluation process. At step four, the ALJ's task is to determine the claimant's RFC and his ability to perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To do so, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec.*

*Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)). Medical opinions are statements from physicians or acceptable medical sources concerning what a claimant may still be able to do despite his impairments; whether the claimant is limited in his ability to perform various work activities; and whether he can see, hear, or use his other senses or "adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

The Regulations governing the evaluation of medical opinions were amended for disability applications filed on or after March 27, 2017, as this one was. 20 C.F.R. §§ 404.1520c, 416.920c; *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 n.4 (11th Cir. 2021). The ALJ now determines the persuasiveness of a medical opinion instead of generally basing its weight on the opinion's source. *Compare* 20 C.F.R. §§ 404.1527, 416.927(c) *with* 20 C.F.R. §§ 404.1520c, 416.920c. In conducting this analysis, an ALJ must consider the following five factors: (1) supportability; (2) consistency; (3) the source's relationship with the claimant; (4) the source's area of specialization; and (5) any other relevant factors "that tend to support or contradict a medical opinion," such as whether the source is familiar with the other record evidence or has "an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c; *see also Nixon v. Kijakazi*, 2021 WL 4146295, at *3 (M.D. Fla. Sept. 13, 2021) (citation omitted).

Of these factors, supportability and consistency are the most important. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c; *Nixon*, 2021 WL 4146295, at *3 (citation

8

omitted). Supportability addresses the extent to which a medical source has articulated record evidence bolstering his own opinion, while consistency deals with whether a medical source's opinion conforms to other evidence in the record. 20 C.F.R. § 404.1520c(b)(1)–(2), (c)(1)–(2), 416.920c(b)(1)–(2), (c)(1)–(2); *Barber v. Comm'r of Soc. Sec.*, 2021 WL 3857562, at *3 (M.D. Fla. Aug. 30, 2021) (citation omitted). The amended Regulations require an ALJ to assess supportability and consistency but do not obligate him to explain how he evaluated the other three factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Freyhagen v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citation omitted). In the end, the amended Regulations—like their predecessors—do not preclude an ALJ from rejecting any medical opinion if the evidence supports a contrary finding. *Freyhagen*, 2019 WL 4686800, at *2 (citing *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam)).

In this case, Drs. Austin and Arroyo saw the Plaintiff in June 2016 for the purpose of recommending which mental health treatment would be most appropriate for him. (R. 422–23). As a result of their examination, they diagnosed the Plaintiff with delusional disorder, alcohol disorder, and adjustment disorder with mixed anxiety and depressed mood. *Id*. Notwithstanding these diagnoses, they found that the Plaintiff "was cooperative and displayed adequate attention and concentration" despite a mild speech issue, and that he "would 'work well with a mild level of supervision in routine-based tasks[,] such as dish [washing] or packaging in

9

warehouses if physical accommodations or exemptions [were] provided.'" *Id*. Drs. Austin and Arroyo also determined that the Plaintiff "'would perform optimally under moderate levels of stress' and could 'socialize in a limited manner with coworkers or conflicts [might] arise due to his lack of psychotropic medication management.'" *Id*. They added, however, that the Plaintiff "could only work if psychotropic medication management [was] re-established." *Id*.

In his decision, the ALJ reviewed Drs. Austin and Arroyo's joint opinion and concluded it was "somewhat persuasive" because the record "supported limited socialization and at least some physical limitation . . . ." (R. 23, 25). The ALJ tempered his findings regarding the persuasiveness of the opinion, however, because he found it to be "vague as to what such limitations might be." *Id.*

The Plaintiff now contends that the ALJ erred in "downplaying" the comment by Drs. Austin and Arroyo that the Plaintiff "could only work if psychotropic medication management [was] re-established." (Doc. 19 at 22–23) (internal quotations and citation omitted). To buttress this contention, the Plaintiff alleges that his mental health disorder did not allow him to maintain a consistent regimen of psychotropic medications and that he also did not have the financial wherewithal to pay for such drugs. *Id.* at 23. This argument fails as well.

To begin, the Plaintiff does not point to any record evidence that expressly connects his mental limitations to an inability to comply with a medication regimen. Irrespective of this deficiency, an ALJ is not required under the new Regulations to analyze, much less adopt, an opinion offered by a healthcare provider where the

10

evidence is considered "inherently neither valuable nor persuasive." 20 C.F.R. §§ 404.1520b(c), 416.920b(c). Statements that fall within this category include "issues reserved to the Commissioner," such as whether a claimant is "able to perform regular or continuing work." *Id.* §§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i). Drs. Austin and Arroyo's observation that the Plaintiff could only work with the appropriate prescription medicine is fairly characterized as an opinion about the Plaintiff's ability to engage in substantial gainful activity, and the ALJ thus did not err by declining to address that assessment. *Jones v. Comm'r of Soc. Sec.*, 2021 WL 4352383, *5 (M.D. Fla. Sept. 24, 2021) (finding that an ALJ does not have to consider or discuss a conclusion that the claimant was unable to work because that is an issue reserved for the Commissioner) (citing 20 C.F.R. § 1520b(c)); *Marshall v. Kijakazi*, 2021 WL 4168107, at *4 (M.D. Fla. Sept. 14, 2021) (finding a physician's assertion that "the [claimant was] unable to work" to be a "statement[ ] on an issue reserved to the Commissioner," which, under the new regulations, is "inherently neither valuable nor persuasive" and need not be addressed at all by the ALJ) (internal quotation marks and citations omitted); *cf.* SSR 18-3p (noting that the Commissioner is responsible for assessing "whether [she] would expect the prescribed treatment, if followed, to restore [a claimant's] ability to" work).

Even were Drs. Austin and Arroyo's observation about the Plaintiff needing psychotropic medication deemed a valid medical opinion, it is not necessary for an ALJ to address each and every piece of evidence in the record. *Cowart v. Schwiker*, 662 F.2d 731, 735 (11th Cir. 1981). As the Eleventh Circuit has explained, "an ALJ is not

required to discuss every piece of evidence, so long as the ALJ's decision is not a broad rejection and there is enough for [the court] to conclude that the ALJ considered the [claimant's] medical condition as a whole." *Stowe v. Soc. Sec. Admin., Comm'r*, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021) (per curiam) (citing *Dyer*, 395 F.3d at 1211). The ALJ's decision here, which includes a recitation and evaluation of Drs. Austin and Arroyo's joint opinion, along with the other relevant record evidence, demonstrates that the ALJ considered the Plaintiff's medical condition as a whole. *Id.*

The Plaintiff's reliance on *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988) and *Vargas v. Commissioner of Social Security*, 2015 WL 328110 (M.D. Fla. Jan. 26, 2015) in this regard is misplaced. In both of these cases, the ALJ erred in discounting a claimant's *subjective complaints* because of the claimant's noncompliance with a treatment plan. *See Dawkins*, 848 F.2d at 1214; *Vargas*, 2015 WL 328110, at *11–12. That is not the situation here. The ALJ did not cite the Plaintiff's lack of adherence to a medication protocol in declining to fully accept Drs. Austin and Arroyo's joint opinion or, for that matter, any subjective complaints raised by the Plaintiff.

IV.

For the foregoing reasons, it is hereby ORDERED:

1. The Commissioner's decision is affirmed.

2. The Clerk of Court is directed to enter Judgment in the Defendant's favor and to close the case.

12

SO ORDERED in Tampa, Florida, this 30th day of March 2022.

*[signature]*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record